

**ORDERED in the Southern District of Florida on February 27, 2012.**

Erik P. Kimball, Judge
United States Bankruptcy Court
_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                                                 Case No. 11-28496-EPK

**LETTIE LUE GILBERT,**                                    Chapter 13

      Debtor.
_____/

ORDER ON
DEBTOR'S MOTION TO ALLOW DEBTOR TO PAY MORTGAGE
PAYMENTS BEYOND THE TERM OF THE PLAN
AND DETERMINE THE TREATMENT OF THE ARREARS

THIS MATTER came before the Court upon the *Debtor's Motion to Allow Debtor to Pay Mortgage Payments Beyond the Term of the Plan and Determine the Treatment of the Arrears* [ECF No. 60] (the "Motion") filed by Lettie Lue Gilbert (the "Debtor"). On November 15, 2011, the Court held a preliminary hearing on the Motion and subsequently entered its *Order Setting Briefing Schedule* [ECF No. 67]. The Debtor filed her *Memorandum of Law in Support of the Debtor's Motion to Allow Debtor to Pay Mortgage Payments Beyond the Term of the Plan and Determine the Treatment of the Arrears* [ECF

No. 71], and creditor Aurora Loan Services, LLC ("Aurora") filed its *Response to Debtor's Memorandum of Law in Support of the Debtor's Motion to Allow Debtor to Pay Mortgage Payments Beyond the Term of the Plan and Determine the Treatment of Arrears* [ECF No. 73]. The Court held a further hearing on the Motion on January 13, 2012. The Court considered the Motion, the briefs, the arguments presented by the parties at the hearings, and the record in this case, and is otherwise fully advised in the premises. As stated more fully below, the Court determines (a) how monthly payments on Aurora's adjustable rate mortgage must be calculated and applied in order to implement "maintenance of payments" under section 1322(b)(5)[1], and (b) that payments made by the Debtor to cure a default under section 1322(b)(5) (excluding interest thereon, if any) must be applied against the allowed secured claim of Aurora as previously determined under section 506(a).

The Debtor seeks: (1) a determination that in a chapter 13 plan the Debtor may extend payments to Aurora beyond the term of such plan; (2) a determination that the Debtor's payments to Aurora to cure an existing arrearage under section 1322(b)(5) are not in addition to payment of Aurora's allowed secured claim but must be applied to reduce Aurora's allowed secured claim; and (3) to have the Court set an amortization schedule for payment of Aurora's allowed secured claim and the Debtor's arrearage on the Aurora debt.

On August 17, 2011, the Debtor filed her *Motion to Value and Determine Secured Status of Lien on Real Property* [ECF No. 27] (the "Motion to Value"), seeking to value certain real property (the "Property") owned by the Debtor and encumbered by a mortgage in favor of Aurora, and to bifurcate Aurora's claim pursuant to section 506(a). The Property is not the Debtor's principal residence. After a hearing on November 15, 2011, the Court entered its *Agreed Order Granting Motion to Value and Determine Secured Status of Lien*

---

[1] Unless otherwise indicated, the terms "section" and "sections" used in this Order refer to sections of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

2

*on Real Property Held by Aurora Loan Services, LLC* [ECF No. 68] (the "Agreed Order"), finding the value of the Property to be $90,500.00 and determining pursuant to section 506(a) that Aurora holds an allowed secured claim in the amount of $90,500.00 and a general unsecured claim in the amount of $44,623.27.

Under section 1322(b)(2), a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." Because the Property is not the Debtor's principal residence the Debtor may rely on section 1322(b)(2) to modify the rights of Aurora. A debtor may use section 1322(b)(2) in a number of ways to modify a creditor's rights, including reducing monthly principal and interest payments. Simply bifurcating a secured creditor's claim under section 506(a), as the Debtor has done, involves the modification of a creditor's rights under section 1322(b)(2). *See Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 332 (1993).

For a debtor whose monthly income equals or exceeds the applicable median family income, "the plan may not provide for payments over a period that is longer than 5 years." 11 U.S.C. § 1322(d). For a debtor whose monthly income is less than the applicable median family income, "the plan may not provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than 5 years." *Id.* In general, a chapter 13 plan must provide for full treatment of creditors within the term of the plan.

Under section 1322(b)(5) a chapter 13 plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." Section 1322(b)(5) provides an implicit

3

exception to the three or five year limit on the term of a chapter 13 plan because it "necessarily presupposes maintenance payments extending beyond the length of the plan." *In re Stivender,* 301 B.R. 498, 500 (Bankr. S.D. Ohio 2003). The Debtor may rely on section 1322(b)(5) in this case because the original maturity date of her debt to Aurora would fall after the end of a five year plan proposed by the Debtor.[2]

This Court has previously held that a chapter 13 debtor may use both section 1322(b)(2) and section 1322(b)(5) to treat a claim secured by non-homestead real property. *In re Elibo*, 447 B.R. 359 (Bankr. S.D. Fla. 2011). Section 1322(b) opens with the permissive phrase "the plan may." The subsections to section 1322(b) are connected by the word "and." The text of section 1322(b) presents no structural reason to conclude that sections 1322(b)(2) and 1322(b)(5) are mutually exclusive. *Elibo*, 447 B.R. at 363; *Fed. Nat'l Mortg. Ass'n v. Ferreira (In re Ferreira)*, 223 B.R. 258, 261-62 (D.R.I. 1998). *But see In re Enewally*, 368 F.3d 1165, 1172 (9th Cir. 2004) (holding that a debtor may not use sections 1322(b)(2) and 506(a) in combination with section 1322(b)(5)). Under section 1322(b)(2) a chapter 13 debtor may modify a claim secured by real property other than the debtor's principal residence by bifurcating that claim under section 506(a) into a secured claim equal to the value of the collateral and an unsecured claim equal to the deficiency. If the last payment on the claim but for acceleration is due after the term of the chapter 13 plan, the debtor may cure any existing default within a reasonable time and maintain payments on the claim while the case is pending under section 1322(b)(5).

Pursuant to the Agreed Order, the Debtor modified Aurora's claim by bifurcating it into a secured claim in the amount of $90,500, the value of the Property, and an unsecured claim in the amount of $44,623.27, the amount of the claim in excess of the value of the Property. Under section 1322(b)(5), the Debtor seeks to cure the existing monetary default

---

[2] The note attached to Aurora's proof of claim matures on July 1, 2036. Claim No. 9-1.

within the plan term and to continue to make payments on the Aurora secured claim during and after the term of the plan. The question before the Court is how the Debtor's cure and maintenance payments should be calculated and applied.

In a traditional amortization of a secured obligation, a portion of each payment is applied to interest, calculated by applying the contract interest rate against the principal balance for the period since the last payment, and the remainder of the payment is applied to reduce the principal balance. The amortization begins with the original loan amount. For example, if a debtor borrows $100,000 payable with 5% interest per annum in monthly installments over 30 years, the monthly payment would be approximately $537.[3] Each monthly payment is first applied to interest. This is typically calculated by taking the principal balance at the beginning of the month, multiplying this amount by the interest rate, and dividing the result by 12 to obtain an interest allocation for the month since the last payment. The remainder of the payment is applied to reduce the principal balance. Thus, with the $100,000 loan, the first monthly payment of $537 would be applied as $417 in interest and $120 in principal, leaving a principal balance of $99,880 at the start of the next payment period.

When a debt is bifurcated under section 506(a) into a secured claim and an unsecured deficiency claim, the application of payments made on the allowed secured claim under section 1322(b)(5) is not so straight-forward. It is almost uniformly held that the phrase "maintenance of payments" in section 1322(b)(5) requires a debtor to continue to make periodic payments to the creditor in the same amount as the debtor made pre-petition and at the interest rate established under the relevant agreement between the debtor and

---

[3] All dollar amounts presented in the Court's calculations are rounded to the nearest dollar to assist in readability.

the creditor.[4]  In the Court's example, to satisfy the "maintenance of payments" requirement under section 1322(b)(5) the debtor must continue to make monthly payments of $537 and the applicable interest rate remains 5% per annum.  However, these monthly payments will not be applied as they were prepetition.  Rather than calculating the interest payable to the creditor based on the original loan balance, the interest payable to the creditor is calculated based on the allowed secured claim.  After application of interest, the remainder is applied to pay down the allowed secured claim, not the original loan balance.  Assume a lender's $100,000 claim has been bifurcated under section 506(a) into a secured claim of $70,000 and an unsecured claim of $30,000.  From the first monthly payment of $537 under the plan, $292 would be applied to interest ($70,000 x 5% / 12), and the remaining $245 would be applied to the $70,000 allowed secured claim, leaving a balance of $69,755 at the start of the next payment period.  The allowed secured claim is paid off more quickly than the original loan amount both because less of each monthly payment is applied to interest and because the secured claim is smaller than the original loan amount.

The Court sees many adjustable rate mortgage loans where the interest rate changes periodically, often annually but sometimes monthly, based on changes in an index interest rate such as the "prime" rate stated in the Wall Street Journal or the London Interbank Offered Rate (LIBOR).  Under these agreements, on each interest rate change date the lender calculates a new monthly payment taking into account the original maturity date, the then existing loan balance, and the new interest rate.  Adjustable rate mortgages are, in effect, re-amortized over the remainder of the original term each time the interest rate changes.

---

[4] Re-amortization of the loan -- establishing a new monthly payment amount based on the reduced amount of the allowed secured claim, a new interest rate, or both -- does not constitute maintenance of payments. *In re McGregor*, 172 B.R. 718, 721 (Bankr. D. Mass. 1994); *In re Murphy*, 175 B.R. 134, 137 (Bankr. D. Mass. 1994).

The Court was unable to find a reported decision analyzing the calculation and application of payments on long term debt under section 1322(b)(5) when the obligation is subject to a variable interest rate. Nor do any of the leading treatises address this issue in any detail. The text of section 1322(b)(5) and the case law addressing payments in the context of fixed interest rate loans lead the Court to conclude that "maintenance of payments" under section 1322(b)(5) requires that the debtor and creditor calculate the monthly payment amount as they would have done outside of bankruptcy under the terms of the prepetition agreement between the parties. As with fixed interest rate loans, the monthly payment amount is calculated without taking into account bifurcation of the claim. The parties must start with the loan balance as calculated under the loan agreement, use the stated maturity date to determine the remaining term of the loan, apply the interest rate using the applicable index and margin, and calculate the resulting monthly payment based on a hypothetical amortization schedule.

This exercise generates only the monthly payment amount. It does not establish how that payment will be applied by the parties under the chapter 13 plan. As with a fixed interest rate loan, the creditor must determine the amount it may accept as interest based on the current interest rate applied to its allowed secured claim as reduced by prior payments under the plan. The remainder of each monthly payment is then applied to the allowed secured claim until it is paid in full.

Continuing with the Court's example, assume the same $100,000 loan with a remaining term of 30 years and an initial interest rate of 5%. Again, the lender's claim is bifurcated under section 506(a) into an allowed secured claim of $70,000 and an unsecured deficiency claim of $30,000. Taking into account the $100,000 full loan balance, 30 years to maturity, and a 5% interest rate, the initial monthly payment is approximately $537. Each payment must be applied against the allowed secured claim of $70,000. From the first

7

monthly payment of $537 under the plan, $292 would be applied to interest ($70,000 x 5% / 12), and the remaining $245 would be applied to the $70,000 allowed secured claim, leaving a balance of $69,755 at the start of the second monthly payment period. From the second monthly payment of $537 under the plan, $291 would be applied to interest ($69,755 x 5% /12), and the remaining $246 would be applied to the now $69,755 secured claim, leaving a balance of $69,509 at the start of the third monthly payment period. Payments would be applied in this manner until the effective date of any interest rate change.

   Assume that one year into the term of the plan the interest rate adjusts to 6%. In order to implement "maintenance of payments" under section 1322(b)(5), the debtor and lender must calculate the new monthly payment under the terms of the loan agreement as though the debtor had not commenced a chapter 13 case, without regard to bifurcation of the lender's claim. This requires the parties to generate a hypothetical loan amortization starting with the full loan balance and taking into account the new interest rate and the remainder of the original loan term. This hypothetical loan amortization must assume that all payments have been applied as though the loan remained in force under its original terms. The amount of the allowed secured claim and the application of prior payments in reduction of the allowed secured claim have no bearing on this analysis. To determine the new loan balance for purposes of calculating the hypothetical amortization schedule, the parties must determine the amount of principal that would have been paid had the loan been amortized according to its original terms, credit this sum to the original loan amount, and calculate the amortization using the resulting loan balance, the new interest rate, and the remainder of the original loan maturity. One year of monthly payments on a loan of $100,000, with interest at 5% per annum and a 30 year maturity, would result in a principal balance of approximately $98,525. Note that this represents a principal reduction of $1,475, somewhat less than the amount that would have been applied in reduction of the

$70,000 allowed secured claim during the same 12 month period under the Court's example. Starting with a hypothetical loan balance of $98,525 in the second year of the plan term, with the new interest rate of 6% and the remaining loan term of 29 years, the new monthly payment amount would be approximately $598. The debtor would make this new monthly payment until the effective date of the next interest rate change, and the payment would be applied against the lender's allowed secured claim as outlined above. Payments cease only when the lender's allowed secured claim is paid in full.

The Debtor's obligation to Aurora is an adjustable rate mortgage. In order to maintain payments consistent with the requirements of section 1322(b)(5), the Debtor and Aurora must calculate each monthly payment amount under the terms of the loan agreement based on a hypothetical loan amortization, using the full loan balance as reduced over time, the original maturity date and the then current interest rate. Aurora must apply part of each payment to interest, calculated by applying the then current interest rate to the secured claim, starting with the allowed secured claim of $90,500, and must apply the remainder to reduction of the principal amount of the allowed secured claim until it is paid in full.[5]

The next question for the Court is how the arrearage on the Debtor's obligation to Aurora should be treated under the Debtor's chapter 13 plan. Aurora's proof of claim reflects an arrearage of $21,019.08. Claim No. 9-1. Section 1322(b)(5) provides that a chapter 13 plan may provide for the curing of any default within a reasonable time. The Debtor proposes to cure her arrearage to Aurora in monthly installments over the five year

---

[5] With an adjustable rate obligation such as that presented in this case the calculation of monthly payments and their application is, admittedly, cumbersome. One wonders whether the lack of reported decisions is indicative of the fact that debtors and mortgage lenders are negotiating how payments must be calculated and applied rather than asking the courts to weigh in on this provision. So long as the Debtor's plan satisfies the other requirements for confirmation, there is nothing preventing the Debtor and Aurora from agreeing to another approach for calculating and applying monthly payments under the Debtor's plan.

9

term of the plan. Second Amended Plan [ECF No. 63]. Aurora does not object to the proposed time period for payment of the arrearage or to the payment of the $21,019.08 in monthly payments.

The Debtor argues that, in addition to the component of her regular monthly payments attributable to principal, her payments on the arrearage to Aurora should be applied in reduction of Aurora's $90,500 allowed secured claim. Aurora argues that the Debtor's obligation to cure her default under section 1322(b)(5) is independent of her obligation to maintain payments on Aurora's allowed secured claim, and that the arrearage of $21,019.08 must be paid in addition to full payment of the $90,500 allowed secured claim with interest. The Debtor's argument properly reflects the requirements of section 1322(b)(5).

A chapter 13 debtor may choose to pay a secured claim with an original maturity date falling after the term of the plan in its entirety during the plan term under sections 1322(b)(2) and 1325(a)(5)(B). Doing so will permit the debtor to modify various terms of the loan, including the maturity date and the interest rate, effectively re-amortizing the loan within the plan term. To do so, however, the debtor must comply with section 1325(a)(5)(B) by providing the present value of the allowed secured claim in equal monthly installments. If the allowed secured claim arises from an obligation that matures after the term of the plan, section 1322(b)(5) provides a debtor another option. A debtor may extend payments on the allowed secured claim beyond the term of the plan but only if the plan complies with specific requirements – that any default be cured within a reasonable period of time and that the debtor maintain regular payments to the creditor as discussed above. The ability to extend payments beyond the term of the plan is a significant benefit to a debtor, particularly when the debt is a mortgage loan and an individual debtor is unlikely to be able to pay off the obligation with interest during the term of the plan. Congress mandated

10

that the debtor pay a price for this benefit, requiring that the debtor cure any existing defaults over a reasonable period of time.  This right of a secured creditor to obtain accelerated repayment of its arrearage is unique among the provisions of the Bankruptcy Code addressing treatment of secured claims.

Even if cure payments made by a debtor under section 1322(b)(5) are credited against the allowed secured claim, the secured creditor obtains a significant advantage in payment of the arrears compared to its potential treatment in chapter 11.  In a chapter 11 case, in most instances, the holder of a secured claim is entitled to periodic cash payments equal to the allowed amount of its secured claim. *See* 11 U.S.C. § 1129(b)(2)(A).  In chapter 11, a secured creditor's arrearage is given no independent treatment; it is part of the creditor's overall claim subject to bifurcation under section 506(a).  The secured portion of the claim is treated over the life of the plan, which may extend well beyond the five year maximum available in chapter 13.  The unsecured deficiency claim is separately classified and treated with other unsecured claims of like priority.  By contrast, in chapter 13, where the debtor seeks to continue payments on a long term obligation under section 1322(b)(5), the amount that is past due to the creditor must be paid in a "reasonable time," a period generally held to be no longer than the term of the plan.  Payments on the allowed secured claim may extend long after the term of the plan, but the arrears must be paid more quickly.

There is nothing in sections 506(a) or 1322(b) leading the Court to conclude that the Debtor's obligation to cure arrears under section 1322(b)(5) is an obligation in addition to payment in full of Aurora's allowed secured claim.  "It has been held that the allowed amount of the secured claim after splitting under § 506(a) is the maximum amount that the mortgage holder is entitled to recover from the debtor, including payments to cure default." Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 140.1, at ¶

11

24, Sec Rev. June 2, 2004, www.Ch13online.com. (citing to *Brown v. Shorewood Fin. Inc. (In re Brown)*, 175 B.R. 129 (Bankr. D. Mass. 1994)). Section 1322(b)(5) does not require "that the debtor must pay the mortgage arrears in addition to [the allowed secured claim]." *In re Cruz*, 152 B.R. 866, 869 (Bankr. S.D.N.Y. 1993).

The Court has already determined, under section 506(a), that Aurora has a secured claim limited to the value of the Property, $90,500. Requiring the Debtor to pay $21,019.08 in arrears on top of this amount would elevate the arrearage to the same status as Aurora's allowed secured claim, in apparent violation of section 506(a). Each payment of cure made by the Debtor under her plan pursuant to section 1322(b)(5), excluding interest thereon under section 1322(e) if any[6], must be applied in reduction of Aurora's allowed secured claim.

The Debtor requested that the Court establish a detailed amortization schedule for payment of Aurora's allowed secured claim and the arrearage. Even if it is appropriate for the Court to determine a specific amortization schedule for payments under the Debtor's plan, the Court lacks necessary information for such purpose. In light of the guidance provided in this order, the parties are in a better position to accomplish this task.

For the foregoing reasons, and being otherwise fully advised in the premises, it is

**ORDERED AND ADJUDGED** that:

1. The Motion [ECF No. 60] is GRANTED to the extent provided herein.

2. In order to satisfy the requirements of 11 U.S.C. § 1322(b)(5):

    (a) The Debtor's chapter 13 plan must provide for regular monthly payments to Aurora during the term of the plan and thereafter until Aurora's allowed

---

[6] Section 1322(e) is applicable in this case because the debt is based on an agreement that was executed after October 22, 1994. *See* Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, §§ 305(c) & 702(b)(2)(D), 108 Stat. 4106 (1994). The parties have not addressed whether Aurora is entitled to interest on arrears under section 1322(e) and the Court makes no finding or ruling in this regard.

12

secured claim of $90,500 is paid in full.  The Debtor and Aurora must calculate the monthly payment amount under the terms of the parties' existing loan agreement, as though the Debtor had not commenced this case and without regard to bifurcation of Aurora's claim under 11 U.S.C. § 506(a), based on the full loan balance as reduced over time, taking into account the original maturity date and the then current interest rate.  Aurora must credit part of each monthly payment to interest, calculated by applying the then current interest rate to Aurora's allowed secured claim, as reduced by prior payments of principal under this sub-paragraph 2(a) and by payments of arrears under sub-paragraph 2(b), below, and must credit the remainder of each monthly payment to Aurora's allowed secured claim until it is paid in full.

      (b)    The Debtor's chapter 13 plan must provide for payment in full of the arrearage on Aurora's loan, in the aggregate amount of $21,019.08, in monthly installments over the term of the plan.  Each payment of arrears under the Debtor's plan must be applied by Aurora in reduction of its allowed secured claim.  If the loan agreement and applicable non-bankruptcy law require that interest be paid on the arrearage pursuant to section 1322(e), the Debtor's plan must provide for payment of such interest on a monthly basis and such interest will not be applied in reduction of Aurora's allowed secured claim but will be received by Aurora as additional interest on its loan.

    3.    The Debtor's chapter 13 plan must treat Aurora's deficiency claim of $44,623.27 as an unsecured claim along with other claims of equal priority.

    4.    So long as the Debtor's plan satisfies all other requirements for confirmation under chapter 13, the Debtor and Aurora may agree to alternative methods for calculating and applying the Debtor's periodic payments to Aurora on account of its allowed secured claim and arrearage in this case.

###

Copies furnished to:

Edward N. Port, Esq.

*Edward N. Port, Esq. is directed to serve a conformed copy of this order on all appropriate parties and file a certificate of service with the Court.*